IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:98cr283 (LMB) |
| ) | |
| BRIAN ANTWANINE JOHNSON ) | |

RESPONSE OF THE UNITED STATES TO DEFENDANT'S
MOTION FOR MODIFICATION OF SENTENCE

The United States opposes defendant's motion for modification of his sentence. Because the Court found the defendant to be responsible for far more than 4.5 kilograms or more of crack cocaine, his guideline range is unaffected by Amendments 706 and 715, making him ineligible for relief under 18 U.S.C. § 3582(c)(2). Moreover, this Court found defendant's offense level to be 47; as a result, even if his guideline level were reduced by two levels by application of the recent amendments, his adjusted guideline range would still require the imposition of the same sentence to life in prison that he received originally.

Procedural Background

On October 28, 1999, a grand jury returned an eight-count superceding indictment against Brian A. Johnson. The indictment charged Johnson with conspiracy to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841 and 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and six counts of substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). On January 5, 2000, the United States filed a criminal information regarding Johnson's prior conviction for a felony drug trafficking offense.

Although Johnson was released on bond in October 1999, his release was revoked and he was arrested again shortly before trial upon a finding of probable cause that he had engaged in witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

On January 18, 2000, one of the six substantive money laundering charges was dismissed upon the government's motion. Then, after a three-day trial, Johnson was convicted of the remaining charges against him.

On May 26, 2000, Johnson was sentenced. This Court accepted the recommendations of the probation office, which concluded that Johnson's guideline range was mandatory life in prison because, while his Criminal History Category was Category I, his offense level was 47. The offense level was calculated upon the base offense level of 38 for more than 1.5 kilograms of crack cocaine,[1] enhanced by two levels for the use of firearms, two levels for obstruction of justice, two levels for use of a minor, and three levels for his role in the offense. Accordingly, this Court sentenced Johnson to life in prison on the drug charge, and to the statutory maximum 240 months on the six money laundering charges. Johnson's convictions and sentence were affirmed on appeal.

Factual Background

Between 1991 and 1998, Brian Johnson made his living from selling crack cocaine, and sold mostly ounce quantities since 1993. Johnson was recruited into the drug business by his cousin, Davis, who sometimes worked with another drug dealer, Hall. Johnson quickly got

---

[1] The Pre-Sentence Report concluded that Johnson was responsible for the distribution of 40 kilograms of crack cocaine. *See* Paragraph 31 or the Pre-Sentence Report.

bigger in the business than Davis, and ended up supplying Davis with drugs. After Johnson and Hall quarreled over drug money, they dealt with each other only occasionally, and warily at that.

In 1991, Johnson started selling and fronting crack cocaine to 14-year old Gary Scaff. When Scaff was about 14 or 15 years old, he sold ounce quantities of crack cocaine obtained from Johnson; from each ounce, he and Johnson split about $2,000. Later, Scaff, who also worked with Hall, purchased quarter-kilogram quantities of crack from Johnson for about $7,000 at least once a week. Scaff distributed crack with Johnson until Scaff was jailed in 1994. Between 1991 and 1994, Scaff traveled with Johnson and Robinson to New York and Miami to purchase cocaine. In New York City, they purchased cocaine from masked vendors inside a building containing a drug market.

Johnson also purchased cocaine from Jamaican suppliers. Johnson quarreled with his confederate Taylor because Taylor paid the Jamaican suppliers $10,000 even though Johnson thought that the Jamaicans had shorted him on cocaine deliveries.

One indicator of the magnitude of Johnson's sales of crack cocaine was the large amounts of cash he spent on cars. Between March 1993 and September 1997, Johnson purchased and drove at least 35 cars costing nearly $600,000, of which at least $156,000 was paid by Johnson in cash. Although most were titled in the names of others, some were titled in Johnson's own name. Many were kept so briefly and traded in so quickly that Johnson only used temporary license tags that could only be traced back to the auto dealer.

Johnson traveled to Virginia to buy many of his cars, sometimes accompanied by Davis or Scaff. On one occasion, he stole from a car dealership lot in Virginia an Acura that he

formerly owned because he had left 19 ounces of crack in the car's secret compartment when the car was repossessed.

## Argument

I. Johnson Distributed More than 4.5 Kilograms of Crack Cocaine

Amendment 706 increased the quantity of crack necessary to receive a base offense level of 38 from more than 1.5 kilograms to more than 4.5 kilograms. Because defendant was responsible for far more than 4.5 kilograms of crack, his base offense level under U.S.S.G. § 2D1.1 remains the same. Accordingly, no relief is authorized.

Johnson was responsible for the distribution of far more than 4.5 kilograms of crack cocaine. After all, as noted in Paragraph 31 of the Pre-Sentence Report, the Probation Office found him responsible for distributing more than *40* kilograms of crack cocaine. Indeed, overwhelming evidence presented at trial established that kilograms of crack were distributed during the course of the multi-year conspiracy. Scaff testified that he started off obtaining ounces of crack from Johnson and then built up to obtaining from him nine ounces of crack at a time, up to three times a week. Scaff testified that, on one occasion alone, he helped Johnson retrieve 19 ounces of crack that was left in a repossessed car. Further, Scaff testified that he accompanied Johnson to Miami and New York to purchase kilo quantities of powder cocaine to be cooked into crack.

Further, without any legitimate source of income, Johnson spent over $150,000 in cash on cars between 1993 and 1997, alone. Even assuming that his profit margin was 100 percent on the crack he sold, he had to have sold at least seven kilograms of crack simply to generate the $150,000 in cash he used to buy his cars. In sum, there is no doubt that proof at trial established

that Johnson's drug conspiracy actually involved more than 4.5 kilograms of crack cocaine. Accordingly, the amendments to the sentencing guidelines would not change Johnson's offense level.

The plain language of § 3582(c) imposes the requirement that a retroactive amendment lower a defendant's "sentencing range" before relief is authorized. The statute provides, "The court may not modify a term of imprisonment once it has been imposed except . . . (2) in the case of a defendant who has been sentenced to a term of imprisonment *based on a sentencing range that has subsequently been lowered* by the Sentencing Commission pursuant to 28 U.S.C. § 994(o). . . ." 18 U.S.C. § 3582(c) (emphasis added).

The requirement in § 3582(c)(2) that an amendment lower the guideline range is repeated in U.S.S.G. § 1B1.10. Section 1B1.10(a)(2)(B) specifies, "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) [of § 1B1.10] does not have the effect of lowering the defendant's applicable guideline range." *See also* Application Note 1(A).

Applying these provisions, courts have unanimously held that defendants who are responsible for 4.5 kilograms or more of crack are ineligible for relief because the retroactive crack amendments do not lower their guideline range. As the Eighth Circuit recently stated in affirming a district court's denial of a motion similar to that brought to this Court by Johnson now:

> [The defendant's] sentence was based on a finding that his relevant conduct involved more than 4.5 kilograms of crack, and the new amendment does not apply where more than 4.5 kilograms of crack is

> involved. U.S.S.G. § 2D1.1 cmt. n. 10(D)(ii). Because of the amount of drugs [the defendant] was involved with, his offense level would not change, his guideline range would not be lowered, and his original sentence is unaffected by the amendments.

*United States v. Wanton*, 525 F.3d 621, 622 (8th Cir. 2008) (*per curiam*). *See also United States v. Quary*, 2008 WL 1766951 (D. Kan. Apr. 15, 2008); *United States v. Harris*, 2008 WL 1342995 (E.D. Pa. Apr. 8, 2008); *United States v. Milton*, 2008 WL 961853 (D. Neb. Apr. 9, 2008); *United States v. Hubbard*, 2008 WL 977344 (M.D. Fla. Apr. 9, 2008); *United States v. Grant*, 2008 WL 906409 (D.N.H. Apr. 3, 2008); *United States v. Bruce*, 2008 WL 678643 (W.D. Va. Mar. 11, 2008). In light of the facts of this case and these authorities, Johnson's motion must be denied because, notwithstanding the guideline amendments, the amendments do not have the effect of lowering the defendant's guidelines range.

    II.    <u>Even Lowered by Two Levels, the Bottom of Johnson's Guidelines Range Is Still Life In Prison</u>

Pursuant to 18 U.S.C. § 3582(c)(2), a defendant's sentence may *only* be reduced when he was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Further, under the statute, a reduction is allowed only when "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

In its revisions to Section 1B1.10, the Commission, consistent with the statutory directive that a reduction should occur only where the defendant's sentencing range was lowered, made clear that a sentencing court is not authorized to reduce a defendant's sentence when a retroactive amendment does not result in lowering the applicable sentencing range for the defendant. Specifically, subsection (a)(2)(B) states: "A reduction in the defendant's term of imprisonment is

not consistent with this policy statement and therefore *is not authorized under 18 U.S.C. § 3582(c)(2)* if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10 (a)(2)(B) (emphasis added).

At sentencing, this Court found that the defendant's offense level was 47. Even if it was reduced by two levels for less than 4.5 kilograms of crack, the offense level would still be 45. The guideline range for Offense Level 45 is the same as the guideline range for Offense Level 47: life in prison. As a result, the amendment to the crack cocaine guidelines could have no effect on Johnson's sentence.

Where, as is the case here, application of the pertinent amendment does not result in a different sentencing range, no reduction of sentence may occur. *United States v. Gonzalez-Balderas*, 105 F.3d 981, 984 (5th Cir. 1997) (affirming denial of a motion for a sentence reduction because, while a retroactive amendment reduced the defendant's offense level, the new level still required the same sentence of life imprisonment that was imposed originally). *See also United States v. McFadden*, 523 F.3d 839, 840 (8th Cir. 2008) (*per curiam*) (rejecting motion under crack amendment).

Thus, the defendant is ineligible for relief, and his motion under § 3582(c)(2) should be denied.

Respectfully Submitted,

Chuck Rosenberg
United States Attorney

By: _____/s_____
Gordon D. Kromberg
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the Government's Response To Defendant's Motion For Modification of Sentence was delivered via first-class mail, postage prepaid, this 25th day of August 2008, to:

>Brian A. Johnson
>No. 33822-037
>U.S.P. - Big Sandy
>P.O. Box 2068
>Inez, Kentucky 41224

>Shane Neff			(by email only)
>United States Probation Officer
>United States District Court
>401 Courthouse Square
>Alexandria, Virginia 22314

>_____/s_____
>Gordon D. Kromberg
>Virginia Bar No. 33676
>Assistant United States Attorney
>Attorney for the United States
>2100 Jamieson Avenue
>Alexandria, VA  22314
>(703) 299-3700
>(703) 837.8242 (fax)
>gordon.kromberg@usdoj.gov